IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGIONAL EMPLOYERS' ASSURANCE | : | CIVIL ACTION |
| LEAGUES VOLUNTARY EMPLOYEES' | : | |
| BENEFICIARY ASSOCIATION TRUST | : | |
| | : | |
| v. | : | |
| | : | |
| GRETCHEN HUTTO CASTELLANO | : | NO.  03-6903 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                    February 10, 2016

## I.     FACTS AND PROCEDURAL HISTORY

Defendant/Counter Claimant ("Mrs. Castellano") has filed a motion for attorneys'

fees in this ERISA action.  The facts and procedural background are long and sordid and

discussed at length in the August 24, 2015 decision issued by the Honorable Mary

McLaughlin granting summary judgment to Mrs. Castellano against the counterclaim

defendants[1] on her Section 502(a)(1)(B) claim for benefits under her husband's welfare

benefit plan, the Regional Employers' Assurance League Voluntary Employees'

Beneficiary Association ("REAL VEBA").  See Doc. 351.  As explained in Judge

McLaughlin's opinion, Domenic M. Castellano, D.D.S., Mrs. Castellano's husband, owned

a dental practice which joined the REAL, an unincorporated association of employers who

adopted a benefit structure for their employees' under the REAL's welfare benefit plan.  Id.

at 6-7.  The assets of the REAL are held in trust by the REAL VEBA.  Id.  The Trust and all

---

[1] The counterclaim defendants include the plan, PennMont Benefit Services, Inc., the plan's administrator, Jeanne D. Bonney, John J. Koresko, V, Koresko Financial L.P., and Koresko & Associates, P.C.  I will refer to the counterclaim defendants as "the Koresko Entities" throughout this opinion.

of the adoption documents were authored by John Koresko, V., an attorney and public accountant.  Id. at 4.

Dr. Castellano purchased a $750,000 flexible premium adjustable life insurance policy for his dental practice through the REAL, which named the Trustee of the REAL VEBA Trust as beneficiary.  See Doc. 351 at 8-9.  Penn-Mont, a corporate affiliate of the law firm of Koresko & Associates, P.C., was the plan administrator.  Id. at 4, 5.  Upon Dr. Castellano's death in 2003, the REAL VEBA Trust received a check for $751,266.18 in life insurance proceeds.  Id. at 9.  Mrs. Castellano submitted a REAL VEBA Death Benefit Form naming her as Dr. Castellano's beneficiary.  Id. at 10.  In response, Penn-Mont gave Mrs. Castellano a choice – ten annual payments of $75,000 or a lump-sum payment of $597,560.14.  Id. at 11.  Mrs. Castellano demanded a lump-sum payment of $750,000, and, in response, Penn-Mont filed a declaratory judgment action against Mrs. Castellano.  Id. at 12-13.  On June 29, 2005, Penn-Mont denied Mrs. Castellano's claim for benefits.  Id. at 13.

On August 24, 2015, more than twelve years after Dr. Castellano's death and the submission of the Death Benefit Form, and nearly twelve years after the inception of this lawsuit, Judge McLaughlin granted summary judgment to Mrs. Castellano on her counterclaim for violation of ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and ordered the Trust to pay Mrs. Castellano $750,000.  See Doc. 351 at 30.[2]

---

[2]In connection with a related case brought by the Department of Labor ("DOL"), Perez v. Koresko, Civ. No. 09-988, Judge McLaughlin found that Koresko, his related entities, and Jeanne Bonney, an attorney who worked for Koresko & Associates, had violated ERISA.  (That case was originally brought in the name of Hilda Solis, the DOL Secretary at the time, and may be referred to herein as the Solis case.)  Judge McLaughlin removed Koresko, Bonney, and the related entities from any position with regard to the

2

Mrs. Castellano, by her attorney Ira B. Silverstein, has filed a motion for attorneys' fees and costs totaling $1,009,905.85, which includes a request for a 25% upward adjustment.  See Doc. 353.  The Honorable Wendy Beetlestone, to whom the case is now assigned, has referred the motion to the undersigned.  Doc. 358.  The motion is supported by Mr. Silverstein's affidavit and voluminous detailed time records.  Docs. 353-2 through 353-7.[3]  The Koresko Entities have not responded to the motion.  I directed the DOL to respond and it has opposed the motion in part, arguing that the attorneys' fees and costs should not be borne by the REAL VEBA or, if they are, should receive no priority above the equitable distribution upon which the court will decide after the accounting process is completed.  See Docs. 359, 363 at 1-2.  Additionally, although it does not address any of the billing entries, the DOL argues that the court should reduce the fees and costs to those related to work performed on the single claim under which Mrs. Castellano obtained relief. Id. at 2.  Mrs. Castellano has submitted a reply in support.  Doc. 364.

---

trusts.  See Perez v. Koresko, 86 F. Supp.3d 293, 391-92 (E.D. Pa. 2015).  Prior to granting summary judgment to Mrs. Castellano in this case, Judge McLaughlin appointed a new Administrator and Trustee for the trusts and has appointed a forensic accountant to conduct an equitable accounting of the assets of the trusts in anticipation of the dissolution of the trusts.  See Doc. 351 at 5 n.4; Civ. No. 09-988, Doc. 1162 (retention of forensic accountant, trustee, and administrator); Doc. 1240 (outlining forensic accountant's duties).

[3]This case has persisted through Mr. Silverstein's tenure at five law firms and he has broken down the bills for each firm:  Doc. 353-3 (Thorp Reed & Armstrong LLP); Doc. 353-4 (Ballard Spahr LLP); Doc. 353-5 (Hargraves McConnell & Costigan P.C.); Doc. 353-6 (Feldman & Morgado P.A.); and Doc. 353-7 (The Silverstein Firm).  Mr. Silverstein states that he has requested but not submitted detailed billing records for approximately $157,000 in fees from two other firms.  Doc. 353-2 ¶ 3.

3

## II.   **LEGAL STANDARDS**

The first step in considering an award of attorneys' fees in an ERISA case is to determine whether the claimant achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010).

The second step in an ERISA attorneys' fees analysis is to determine whether attorneys' fees should be awarded.  Although "there is no presumption that a successful plaintiff in an ERISA suit should receive an award [of attorneys' fees] in the absence of exceptional circumstances," McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 254 (3d Cir. 1994), the Third Circuit has acknowledged that ERISA defendants often bear the burden of attorneys' fees for a prevailing plaintiff.  Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2002).

The Third Circuit has developed a list of factors to be considered in making the determination of *whether* an award of attorneys' fees is appropriate:  (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.  Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).  Although the court may consider other factors, at a minimum "it must articulate its considerations, its analysis, its reasons and its conclusions touching on each of [the Ursic] factors."  McGuffey v. Brink's, Inc., 594 F. Supp.2d 553, 555 (E.D. Pa. 2009) (Brody, J.) (quoting Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1012 (3d Cir.

1992)).  Moreover, the <u>Ursic</u> factors are not a rigid test.  They provide a useful framework to analyze a motion for attorneys' fees.  <u>Fields v. Thompson Printing Co.</u>, 363 F.3d 259, 275 (3d Cir. 2004).  "[N]o one of [the] factors is decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address" in considering an award of attorneys' fees in an ERISA case.  <u>Veira v. Life Ins. Co. of No. Am.</u>, Civ. No. 09-3574, 2013 WL 3199091, at *2 (E.D. Pa. June 25, 2013) (Robeno, J.).

If the court determines attorneys' fees should be awarded, the final step in the analysis requires the court to "review the attorneys' fees and costs requested and limit them to a reasonable amount."  <u>Hardt</u>, 560 U.S. at 249; <u>see</u> <u>also</u> <u>Viera</u>, 2013 WL 3199091, at *2.

## III.  <u>ANALYSIS</u>

I note that the DOL "does not take issue with Castellano's contention that she is entitled to some award of attorney's fees and costs based on the former fiduciaries' arbitrary and capricious denial of her benefits claim."  Doc. 363 at 1.  However, the Third Circuit has determined that full analysis of the <u>Ursic</u> factors is necessary in determining the propriety of a fee award.  <u>McGuffey</u>, 594 F. Supp.2d at 555 (quoting <u>Anthuis</u>, 971 F.2d at 1012).

### 1.  <u>Degree of Success</u>

There can be no doubt that Mrs. Castello achieved "some degree of success" in this action.  From the outset, she sought the full amount of the plan benefit to which she was entitled after her husband's death.  She achieved it.

2. **Ursic Factors**

    a. <u>Culpability and Bad Faith</u>

In determining whether an award of attorneys' fees is warranted, the court must consider the offending parties' culpability or bad faith. <u>Ursic</u>, 719 F.2d at 673. "[B]ad faith normally connotes an ulterior motive or sinister purpose." <u>McGuffey</u>, 594 F. Supp.2d at 556 (quoting <u>McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.</u>, 33 F.3d 253, 256 (3d Cir. 1994)). "'[C]ulpable conduct' means 'conduct that is blameable; censurable; . . . at fault; involving a breach of a legal duty or the commission of a fault.'" <u>Id.</u> (quoting Black's Law Dictionary 96th ed. 1990)).

Considering the litany of fiduciary breaches outlined in Judge McLaughlin's February 6, 2015 Memorandum in the related <u>Perez</u> case, <u>see</u> Civ. No. 09-988, Doc. 1134, and the procedural irregularities, delay, and abuse of discretion detailed in Judge McLaughlin's August 24, 2015 Memorandum in this case, <u>see</u> Doc. 351, I conclude that the offending parties acted in bad faith. This factor favors an award of fees.

    b. <u>Ability to Satisfy an Award of Attorneys' Fees</u>

As Mrs. Castellano's counsel concedes, analysis of this factor is "somewhat more complicated." Doc. 353-8 at 6. <u>Ursic</u> speaks in terms of the offending parties' ability to satisfy an award of attorneys' fees. 719 F.2d at 673. Here, the offending parties are the Koresko Entities who were the fiduciaries who delayed and ultimately denied Mrs. Castellano's claim. Judge McLaughlin removed them from any contact with the Trusts and ordered certain of them to disgorge and repay the Trusts $19,852,114.88 in the <u>Perez</u> case

6

(the court took control of an additional $19,987,362.16 that remained in the Trusts).  86  F. Supp.3d 293, 392-96 (later reduced by $79,568.74, see Civ. No. 09-988, Docs. 1197 & 1198).  Neither Mr. Koresko nor any of his entities has responded to Mrs. Castellano's motion for fees, and the court is in no position to determine their ability to pay attorneys' fees.

Further complicating consideration of the Ursic factors is the fact that Mrs. Castellano's counsel clearly expects payment from the Trust/plan assets, not the wrongdoers.  See Doc. 364.  Under these circumstances, it is unclear whether Ursic would require the court to determine the ability of the Trust to satisfy an attorneys' fee award. However, if I were to order the Trust to pay the fees, it would seem logical to determine their ability to pay for purposes of the Ursic analysis.

Mrs. Castellano's counsel paints a rosy picture of the Trust's assets.  See Doc. 353-8 at 7.  At this point, the court cannot speculate about the ability of the Trust to meet or exceed its liabilities. The court has seized all Trust assets so that at the curret time the Trust does  have liquid assets, but its liabilities are as yet unknown.  What is known is that the Koresko Entities were ordered to pay over $19 million to the Trusts, none of which has yet been paid.  Judge McLaughlin appointed a forensic accountant who is in the process of determining the Trust's assets and liabilities and making recommendations as to an equitable distribution.  Thus, I conclude this factor favors neither side.

c.      Deterrent Effect

The third <u>Ursic</u> factor, as Mrs. Castellano concedes, does not favor an award of fees.
<u>See</u> Doc. 353-8 at 8.  The offending parties have been removed as fiduciaries, so an award
of fees cannot deter them from wrongdoing in this matter.  Although an award of fees
against them could have a deterrent effect as to misdeeds concerning other ERISA plans,
such deterrent effect is minimal considering the ramifications of the <u>Perez</u> case.

d.      Benefit Conferred on the Plan

The relevant question here is the impact of Mrs. Castellano's successful litigation on
the members of the plan as a whole.  Mrs. Castellano's counsel and the DOL disagree about
which action had the greater benefit.  <u>See</u> Doc. 353-8 at 8 (Castellano arguing that this "case
conferred the most dramatic of benefits upon all REAL VEBA participants"); Doc. 363 at
11 (DOL arguing that "the [DOL]'s civil action in another case played heavily in the
removal of Koresko and Penn-Mont as plan fiduciaries").  Moreover, the DOL notes that
because there is no significant direct benefit to the plans by an award of attorney's fees, this
factor weighs against such an award.

Although the DOL correctly notes that the DOL's action in the related <u>Perez</u> case
resulted in the removal of Koresko and the related entities from any position of control over
the plan assets, the DOL seems to minimize Mrs. Castellano's role (or more specifically, the
role of her lawsuit) in bringing Koresko's breaches of fiduciary duty to light.  In its original
Complaint, among other transactions, the DOL relied on the facts developed in the
<u>Castellano</u> case to plead fiduciary breaches and ERISA violations.  <u>See</u> Civ. No. 09-988,

8

Doc. 1 §§ 28, 44.  In its motion for a temporary restraining order seeking Koresko's

removal from oversight of the Trusts, the DOL relied, in part, on the transfer of the

Castellano death benefit into the Koresko Law Firm account and subsequent purchase of

property in Nevis with those funds.  See Civ. No. 09-988, Doc. 377-2 at 12-13.  In granting

the temporary restraining order, Judge McLaughlin relied on the record developed in Perez,

Castellano, and several other cases related to the Trusts in granting the motion.  See Civ.

No. 03-6903, Doc. 307; Civ. No. 09-988, Docs. 429, 431, 496, 502.  This factor favors an

award of fees.

               e.     Relative Merits of the Parties' Positions

The DOL "agrees that the relative merits of the parties' positions under the fifth

Ursic factor weigh in Castellano's favor, but not as to the payment of funds from the REAL

VEBA Trust."  Doc. 363 at 11.  I will discuss the differentiation between the former

fiduciaries and the Trust in the next section.  However, for purposes of Ursic, I conclude

that the fifth factor favors an award of fees.  After a long-fought court battle, Mrs.

Castellano ultimately was awarded that to which she claimed entitlement in 2003.[4]  It would

be a hollow victory if the award she achieved was rendered worthless by the payment of her

attorney.

---

[4]Judge McLaughlin's decision was limited to the Koresko Entities' ultimate denial of
benefits to Mrs. Castellano on June 29, 2005.  See Doc. 351 at 22 n.16.  Judge McLaughlin
did not address the validity of the original settlement offers made by the Koresko Entities
which included a ten-year payout or a reduced amount up front.

### 3.   <u>Other Considerations</u>

The Third Circuit does not limit the determination of whether to award fees to the

<u>Ursic</u> factors.  <u>Anthuis</u>, 971 F.2d at 1011 (<u>Ursic</u> factors, among others, to be considered and

balanced).  Here, the relationship between this case and the <u>Perez</u> case cannot be

overlooked.  In <u>Perez</u>, the court found that Koresko and his entities had violated various

fiduciary duties, including the delay and denial of benefits to Mrs. Castellano.  As a result of

a litany of such breaches, Judge McLaughlin retained a trustee to oversee the Trusts and a

forensic accountant to determine the assets and liabilities of the Trusts and each Plan's

interest in the Trusts' assets.  The forensic accountant is in the process of conducting this

accounting in preparation for the equitable distribution of the Trusts' assets.  Thus, as the

DOL strenuously argues, "an award of attorney's fees against the REAL VEBA Trust

would harm other plan beneficiaries by reducing the assets available for paying benefits."

Doc. 363 at 11.  Although this consideration weighs heavily against an award of fees from

the Trusts, I note that the Third Circuit has permitted fee awards from plan assets.  <u>See</u>

<u>Goldstein v. Assocs. In Gastroenterology of Pittsburgh Amended & Restated Pension Plan</u>,

137 Fed. Appx. 441 (3d Cir. 2005); <u>Carney v. IBEW Local Union 98 Pension Fund</u>, 66 Fed.

Appx. 381 (3d Cir. 2003).

Moreover, when considered along with the <u>Ursic</u> factors, I conclude that an award of

fees is appropriate.  This is the oldest of the Koresko-related cases.  Mrs. Castellano began

this fight before the DOL took up the cause and continued despite various setbacks.  During

my involvement with the case,[5] Mrs. Castellano's counsel has assisted the DOL and the

court in tracking down Trust assets and bringing the Koresko Entities' fiduciary breaches to

the authorities' attention.

###    4.    **Reasonable Attorneys' Fees**

"Reasonable attorneys' fees in an ERISA litigation are calculated using the lodestar

approach, which yields a presumptively reasonable fee." Tomasko v. Ira H. Weinstock,

P.C., 357 Fed. Appx. 472, 478 (3d Cir. 2009) (citing Hahnemann Univ. Hosp. v. All Shore,

Inc., 514 F.3d 300, 310 (3d Cir. 2008)).  The lodestar requires the court to determine the

reasonable number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate.  Id.; Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

In this case, the court is left to its own devices to apply the lodestar.[6]  The Koresko

Entities have not responded to the motion for attorneys' fees,[7] and the DOL proposed a

---

[5]Judge McLaughlin referred the Perez case (still captioned Solis) to me in December 2010, to discuss settlement with the parties.  See Civ. No. 09-988, Doc. 244.  Once Judge McLaughlin had granted the temporary restraining order, she appointed me to oversee and implement her Order appointing an Independent Fiduciary ("IF") and transferring control of the Trusts' assets to the IF.  See id. Doc. 532.  I also oversaw certain discovery, including the monitoring of depositions and the transfer of the electronic database to the IF.

[6]The court acknowledges the Third Circuit's decision in Bell v. United Princeton Props., 884 F.2d 713 (3d Cir. 1989), which prohibits the court from reducing a request for attorneys' fees sua sponte.  This case, however, presents a unique situation where the court removed the Koresko entities as the fiduciaries of the plan and the Koresko entities have abandoned the litigation.  Although the court sought the input of the DOL, it was not a party to this specific litigation.  It is, in fact, the plan assets that will be used to pay counsels' fees.  At this point, the court is overseeing the disbursement of the plan assets and is therefore in the best position to assess the reasonableness of the fees.

[7]Although the individual Plaintiffs may represent themselves, the corporate Plaintiffs may not.  Corporations may not be represented by other than licensed counsel.  United

11

blanket reduction based on Mrs. Castellano's success without conducting an hour-by-hour analysis under the lodestar. I reject the DOL's invitation to adopt a blanket approach in this case. The DOL argues that because Mrs. Castellano succeeded on only one of her claims (section 1132(a)(1)(B)), the court should reduce her attorneys' fees by 50%. See Doc. 363 at 12-14. However, Judge McLaughlin explained in her decision granting Mrs. Castellano's motion for summary judgment that the state law claims were alternative theories of recovery and were preempted by the court's conclusion that the Plan was covered by ERISA. Likewise, Judge McLaughlin did not decide Mrs. Castellano's claim for equitable relief "in light of the Court's conclusion that Castellano is entitled to benefits under the Plan documents." Doc. 351 at 32. Thus, the blanket approach based on Mrs. Castellano's limited success is inappropriate. Therefore, I have thoroughly reviewed the timesheets provided.[8]

---

States v. Cocivera, 104 F.3d 566, 572 (3d Cir. 1996). Here, Mr. Koresko represented the corporate entities throughout the litigation. However, the Pennsylvania Supreme Court temporarily suspended him from practicing law on December 19, 2013, see In the Matter of: John J. Koresko, V., 13-mc-294 (E.D. Pa. Dec. 27, 2013 ) (Doc. 1), and disbarred him from practice on September 4, 2015. See Doc. 354-2. The judges of this court are currently considering disciplinary action. See In the Matter of: John J. Koresko, V., 13-mc-294 (E.D. Pa.).

[8]In another of the Koresko cases in which Mr. Silverstein's client was successful, Langlais v. Pennmont Benefit Servs. Inc., Civ. No. 11-5275, Mr. Silverstein filed an attorneys' fees petition for $285,572.30, charging identical rates for identical time periods. Civ. No. 11-5275, Docs. 35 & 61. Although the Koresko entities responded to that petition, the response is not helpful in assessing the lodestar in this case because they relied on the fact that the case was on appeal to argue against an award of attorneys' fees. Id. Doc. 40. Ultimately, Judge McLaughlin granted partial attorneys' fees, giving counsel the remaining $100,000 of the supersedeas bond posted for the appeal. Id. Doc. 67. Judge McLaughlin denied the remainder of the fees without prejudice, noting that "petitioners' are entitled to at least $100,000 in fees." Id.

a.      Rate

As previously mentioned, this litigation has spanned twelve years.  During that time,

Mr. Silverstein, lead counsel on the case, charged an hourly rate of $400 - $700 per hour.[9]

The other lawyers who assisted Mr. Silverstein billed substantially less.  Mr. Silverstein has

provided only his own affidavit in support of his hourly rate in this case, and has not

submitted any evidence of the hourly rate of the other lawyers.[10]  Considering Mr.

Silverstein's education and experience along with the evidence submitted in support of his

rate in the Langlais case, I am inclined to accept his charged hourly rate as well as the lesser

rates of other counsel.

b.      Hours Reasonably Expended

In applying the lodestar, I must determine the hours reasonably expended on the

litigation and reasonable rate for counsel's services.  Hours are not reasonably expended if

they are "excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S.

424, 433 (1983).  Here, the time sheets are fraught with six categories of time I find to be

not reasonable; 1) excessive hours, 2) duplicative work, 3) travel time, 4) billing for

_____

[9]The following reflects Mr. Silverstein's rate based on the timesheets, the dates indicating the first day on which he charged a new rate:  $400 – August 9, 2004; $420 – July 1, 2005; $435 – June 22, 2006; $455 – July 7, 2006; $475 – July 12, 2007; $500 – July 16, 2008; $520 – January 8, 2010; $650 – May 3, 2010; $675 – January 14, 2011; $700 – January 5, 2012.

[10]In the Langlais case, Mr. Silverstein included an additional affidavit of counsel in support of his hourly rate.  That attorney, Dale Morgado, Esq., cited several ERISA attorneys charging comparable rates.  Civ. No. 11-5275, Doc. 35-3 at 4.  I also note that Judge Davis approved counsels' fee petition in a similar case for $400 per hour in January 2005.  In that case, Mr. Silverstein billed $400 per hour, Dunah Park billed $210 per hour, and Lisa Eldridge billed $250 per hour.  Civ. No. 04-2560, Doc. 48.

administrative duties, 5) time spent during administrative proceedings, and 6) fees charged

for activities unnecessary to Mrs. Castellano's claims.[11]  I will deal with each category

separately, and, apart from entries presented in list form, have indicated amounts to be

deducted from the claimed fees by shading.

i.      <u>Excessive Hours</u>[12]

The hours expended by counsel must be reasonable and the party seeking the fees has

the burden to establish reasonableness.  <u>Hensley</u>, 461 U.S. at 432, <u>Rode v. Dellarciprete</u>,

892 F.2d 1177, 1183 (3d Cir. 1990).  With respect to many filings or functions, many

attorneys worked on a project and counsel expended an extraordinary amount of time,

which will not be fully compensated.  For example, counsel bills for a total of 37.8 hours for

the drafting, review, and editing of the answer to the complaint and counterclaim.  <u>See</u> Doc.

353-3 at 2-4 (all pinpoint citations to billing records refer to the court's ECF pagination).

The rates charged for the drafting, review, and editing range from $210 to $400 per hour for

four different attorneys, totaling $10,077.50.  This is excessive for a 26-page document

which denies the allegations in the complaint, lists 18 affirmative pro forma defenses, and

presents a five-count counterclaim contained in nine pages.  <u>See</u> Doc. 27.  I will reduce it by

half.  <u>See</u> <u>Vitullo v. Borough of Yeadon</u>, Civ. No. 04-3929, 2006 WL 1789031 at *9 (E.D.

Pa. June 21, 2006) (analyzing hours to length of response and complexity).  (-$5,038.75)

---

[11]This process is made difficult by the sheer volume of 13 years of billing records, and by counsel's block billing -- combining entries or lumping hours together for multiple activities.

[12]In each of these calculations, I have excluded time dedicated to activities that the court considers administrative.  Reductions applicable to administrative functions are addressed in section iv.

Counsel has billed for 89.7 hours for the preparation of interrogatories and requests for production of documents in August and September of 2006, totaling $22,148. Underline See Doc. 353-3 at 22-25. Counsel has not provided any evidence to justify nearly 90 hours for the preparation of this discovery. Even considering the complexity of the intertwining of the Koresko Entities with the Trusts, such a figure is unreasonable. I will reduce it by half. (-$11,074).

Counsel has billed 62.4 hours for the work of five attorneys related to the response to Plaintiffs' summary judgment motion, totaling $15,124. See Doc. 353-3 at 25-29. The response to Plaintiffs' summary judgment motion was 18 pages, which includes a 9-page procedural history and factual statement and a page and a half of regurgitation of the summary judgment standard, leaving 8 pages of legal argument. See Doc. 66. The hours billed are excessive and the fee will be reduced by half. (-$7,562)

The bill for the preparation of a motion to compel more specific answers to discovery resulted in billing for 20.1 hours or $4,075. See Doc. 353-3 at 35-37. The brief in support of the motion is 9 pages long, 4 of which are dedicated to legal argument. See Doc. 78. The hours are excessive and the fee for this work will be reduced by half. (-$2,037.50)

A total of 90.4 hours ($22,555) was billed for the preparation, research, revision, review, and editing of Castellano's motion for summary judgment and the organization of the exhibits to that motion. Doc. 353-3 at 55, 58-60. The motion consists of 14 pages and voluminous exhibits are attached, including deposition excerpts. Doc. 125. After laying out the factual background, counsel argues in half a page that Plaintiffs acted under a conflict of

interest.  Much of the factual background had been recited in earlier filings, but this filing

includes quotations from the policy language.  Doc. 125.  A 65-page memorandum of law

accompanies the motion, 21 pages of which recites the factual background of the case.  See

Local Union No. 1992 of Intern. Broth. of Elec. Workers v. Okonite Co., 34 F. Supp.2d

230, 239 (D.N.J. 1998) (unreasonable to bill 35.4 hours for the creation of a document

substantially similar to earlier created document).  Thus, the meat of this filing is 44 pages.

Although counsel grappled with the applicability of ERISA in the summary judgment

motion, 85 hours seems unreasonable for this work.  I will reduce the fees attributable to

this filing by one-third.  (-$7,518)

Counsel has billed 80.9 hours for a total of $21,125 for three lawyers for the

preparation of responses to Plaintiffs' motions for summary judgment and to disqualify

counsel.  Doc. 353-3 at 60-62.  Although the 22-page response to the motion to disqualify

counsel covers new territory, much of the 65 page response to Plaintiffs' summary

judgment motion is rehashing and regurgitating the argument in Castellano's own motion

for summary judgment.  Compare Doc. 126 at 30-40 with Doc. 134-1 at 3-9.  I will reduce

the charges related to these responses as follows.  Counsel will be paid in full ($5,342) for

the time spent on the response to the disqualification (22/87 x $21,125).  Counsel shall be

paid one-quarter of the time billed ($3,545.75) for the response to summary judgment

(65/87 x .25 x $21,125).  Thus, $21,125 is reduced to $8,887.75.  (-$12,237.25)

Counsel then charged $4,600 for 17.5 hours for the preparation and filing of the reply

summary judgment brief, which was 10 pages long and cited law previously relied upon in

their own summary judgment motion or response to Plaintiffs' motion.  Doc. 353-3 at 62-63.  This is excessive and will be reduced by two-thirds for a total payment of $1,533.33.  See Local Union No. 1992, supra.  (-$3,066.67).

Perhaps the most egregious of the excessive billings is in relation to the supplemental summary judgment motion filed on August 26, 2011.  See Docs. 249 & 250.  The statement of undisputed facts and memorandum of law encompass 172 pages.  Counsel has billed a total of 304.2 hours ($137,190) for the research, drafting, and editing of the motion and its component parts, and for time spent seeking an extension for the filing.  See Doc. 353-4 at 12-21.  This amounts to nearly $800 per page.  The court recognizes that the supplemental summary judgment motion was more factually detailed and the legal arguments were more developed than in the original motion, see Docs. 126, 249, 250, and the motion was ultimately successful.  See Docs. 351 & 352.  However, the hours spent on this motion are excessive.   The court will reduce the billing by half.  (-$68,595)

The summary judgment reply brief filed on December 2, 2011, is eight pages long, including the Certificate of Service.  See Doc. 262.  Counsel has billed 12.8 hours for research and drafting of this document for a total of $7,632.  See Doc. 353-4 at 22.  This does not include the hours spent reviewing the response to the motion or research into a decision the Koresko Entities relied upon in responding to the motion.  These hours and charges are patently unreasonable and shall be reduced by half.  (-$3,816)

Counsel spent 45.6 hours preparing a motion to supplement the record with newly discovered evidence that had been in the control of the Koresko Entities.  See Doc. 353-5 at

5-7.  Although the court agrees that the effort to supplement was reasonable in light of the

newly discovered evidence, the amount of time is excessive.  The 8-page motion and 4-page

memorandum do not warrant an award of $20,471, and will be reduced by half.[13]

(-$10,235.50)

Finally, counsel has billed for 21.2 hours for the work related to the preparation of

the attorneys' fees petition.  See Doc. 353-7 at 3.  Although counsel is entitled to payment

for the work expended in such endeavor, see Hernandez v. Kalinowski, 146 F.3d 196, 199-

200 (3d Cir. 1998) (time on fee petition compensable as long as hours are not excessive),

this time billed by the senior attorney on the case at $700 per hour, is excessive.  This will

be cut in half.  (-$7,420)

The reductions attributable to excessive hours total $138,600.67

## ii.    Duplicative Work

There are also instances of duplicative work.  For example, two attorneys attended

oral argument in May of 2005.  See Doc. 353-3 at 17.  This was unnecessary.  See Walker

v. Gruver, Civ. No. 11-1223, 2013 WL 5947623, at *11 (M.D. Pa. Nov. 5, 2013) (citing

Shaw v. Cumberland Truck Equip. Co., Civ. No. 09-359, 2012 WL 1130605, at *5 (M.D.

Pa. Mar. 30, 2012) (redundant hours with two attorneys at deposition)).  Four hours charged

by the junior attorney will be deleted.  (-$840)  Two attorneys attended a status conference

on June 27, 2006.  See Doc. 353-3 at 21.  One hour of the junior attorney's time is

---

[13]At the time of this billing, lead counsel was charging $700 per hour.  See Doc. 353-5 at 5-6.  Although more junior associates assisted in the preparation of this motion, 24.2 of the hours billed were by lead counsel.  Considering his experience, as signified by his billing rate, 24.2 hours on this motion is unreasonable.

eliminated.  (-$230)  Two attorneys attended a conference with Judge Green in February

2007.  See Doc. 353-3 at 43.  This was unnecessary.  I will reduce two hours of billing time

for the more junior attorney.  (-$500)  Likewise, two attorneys attended a discovery hearing

in April 2007.  See Doc. 353-3 at 53.  I will reduce the junior attorney's bill by one hour.

(-$250)  Two attorneys also prepared for and attended the deposition of Jeanne Bonney on

May 24, 2007.  Doc. 353-3 at 54.  This is duplicative and the 4.5 hours billed will be

eliminated.  (-$990)  The double billing for attendance at a telephonic case management

conference with Judge Jones is unacceptable.  See Doc. 353-3 at 71.  One hour of the junior

attorney's time will be eliminated.  (-$270)  Similarly, two attorneys traveled to Florida and

attended Mrs. Castellano's July 2007 deposition.  Doc. 353-3 at 56.  Six hours billed at

$250 per hour will be eliminated.  (-$1,500).[14]  Two attorneys also attended a settlement

conference in March of 2009.  See Doc. 353-3 at 72-73.[15]  The time billed by the junior of

these two attorneys will be eliminated.  (-$1,350)  Two attorneys charged for participation

in a phone call with Judge McLaughlin regarding discovery on June 24, 2011.  See Doc.

353-4 at 15.  The fee request will be reduced by .4 hours of the junior attorney's time.

(-$136)  It also appears that Mr. Silverstein mistakenly billed twice for attending a Rule 16

conference on September 8, 2004.  See Doc. 353-3 at 6.  The billing for 1 hour will be

eliminated.  (-$400)

---

[14]The travel time billed at the full hourly rate will also be reduced.  See infra at 21-22
(travel time).

[15]It appears that the conference took 5 hours.  See Doc. 353-3 at 72-73.  The
additional time billed by the junior attorney for the meeting with the client is permissible.
The entry will be reduced by 5 hours billed at $270 per hour.

In September 2007, the Third Circuit decided <u>Post v. Hartford</u> 501 F.3d 154 (3d Cir. 2007), which discussed the standard of review applicable in ERISA cases. The billing summary reflects that two lawyers, including the senior attorney, reviewed the case for a total of 2.4 hours or $915. Doc. 353-3 at 63. This is duplicative. The time charged by the junior attorney will be eliminated. (-$250) Similarly, both senior and junior attorneys reviewed <u>MetLife v. Glenn</u>, 552 U.S. 1161 (2008). <u>See</u> Doc. 353-3 at 69. The time expended by the junior attorney will be eliminated. (-$324) Two attorneys also attended a status conference on October 6, 2010. <u>See</u> Doc. 353-4 at 5. The time charged by the junior attorney will be eliminated. (-$720) Two attorneys attended the TRO hearing on May 27, 2011. <u>See</u> Doc. 353-4 at 13. The hours submitted by the junior attorney will be eliminated. (-$748)

In December 2009, counsel billed for a number of hours related to the research and preparation of a motion to supplement the dispositive motion record. <u>See</u> Doc. 353-3 at 83. As previously mentioned, that motion was not filed until November 9, 2010. <u>See</u> Doc. 200. After switching firms, however, there is an entry dated October 19, 2010, entitled "Begin drafting motion to supplement summary judgment and re-open discovery." <u>See</u> Doc. 353-4 at 5. A number of entries follow regarding the drafting of the same motion. <u>Id.</u> It seems that the prior research was lost. The court will not permit the double-billing, and will reduce the billing by $6,480, the amount billed for the preliminary work done in October 2010 for the drafting of the motion to supplement the summary judgment record. (-$6,480)

The reductions attributable to redundant billing total $14,988.

20

iii.    Travel Time

The billing entries for counsel's travel also appear excessive at times.  For example, on March 18 and 19, 2007, counsel travelled to Florida and back to attend the deposition of his client.  On March 18, he billed 6 hours to travel to and prepare for the deposition, and the next day, he billed 10 hours to "Confer with client; Attend deposition; Travel from Tampa."  Doc. 353-3 at 49.  In the March 19 entry, there is no indication he was working on the case while traveling, and no breakdown of his hours.  Several courts in our circuit have reduced counsel's rate by one-half for travel time.  See Gonzalez v. Bustleton Servs., Civ. No. 08-4703, 2010 WL 3282623, at *3 (E.D. Pa. Aug. 18, 2010) (citing cases).  Therefore, I will reduce counsel's rate ($455 per hour) by one-half for 6 hours of the time on March 19, 2007.  (-$1,365)

Likewise, in July 2007, counsel billed at the full hourly rate ($475) for travel to attend Mrs. Castellano's deposition  with no indication that work was performed on the case during travel.  Doc. 353-3 at 56.  Therefore, I will reduce the billing by half.  (-$1,425)[16]

Counsel also billed his full hourly rate ($475) for travel to attend a settlement conference in Allentown in November 2007.  See Doc. 353-3 at 65.  I will reduce his rate by half for two hours to account for travel time.  (-$475)  Likewise counsel billed a full rate

---

[16]There are two separate billings for July 13, 2007, by the same attorney.  The first is for 6 hours "Travel to and attend Castellano deposition."  Doc. 353-3 at 56.  The second is 8 hours to "Attend deposition of G[retchen] Castellano."  Id. at 57.  Six hours travel time is consistent with other travels to Florida to depose Mrs. Castellano.

($650) for travel to attend a hearing on October 6, 2010.[17]  See Doc. 33-4 at 5.  I will reduce

the rate by half for one hour.  (-$325)  I will also reduce one billed hour ($675) by half for

the travel to attend a hearing on May 27, 2011.  See Doc. 353-4 at 13.  (-$337.50)

Reductions attributable to travel total $3,927.50.

iv.   Administrative Duties

The billing records include numerous entries for duties more appropriately

characterized as administrative.  Counsel have billed at full rate for activities such as

retrieving  dockets, calling a process server, sending documents to a copier, calls to the

court or counsel to schedule hearings or depositions, obtaining copies of filings, and

electronically filing documents.  Several of the judges of our court have concluded that

clerical tasks should not be billed at an hourly rate.

> As a general rule, time that would not be billed to a client cannot
> be imposed on an adversary.  Public Interest Research Group of
> New Jersey, Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).
> Thus, administrative tasks, which are not the type normally
> billed to a paying client, may not be recovered by a party
> through a fee petition.  See Spegon v. Catholic Bishop of Chi.,
> 175 F.3d 544, 552 (7th Cir. 1999) ( finding the district court did
> not abuse its discretion by disallowing attorney's time spent on
> administrative tasks and striking nearly all of the paralegal's
> hours).

Alexander v. NCO Fin. Sys., Inc., Civ. No. 11-401, 2011 WL 2415156, at *6 (E.D. Pa. June

16, 2011) (Slomsky, J.); see also In re: Unisys Corp. Retiree Med. Benefits ERISA Litig.,

Civ. No. 03-3924, 2008 WL 2600364, at *13 (E.D. Pa. June 26, 2008) (Kauffman, J.).

"Since the costs of clerical work, such as filing and copying, are ordinarily considered to be

---

[17]The docket indicates that this hearing was held before Judge McLaughlin in
Philadelphia.  See Docs. 197, 197.

part of an attorney's rate as office overhead, they will not be compensated."  Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp.2d 538, 549 (E.D. Pa. 2003) (citing Doe v. Ward, Civ. No. 98-1746, 2003 WL 22187170, at *10 (W.D. Pa. Sept. 16, 2003) (finding that clerical tasks are office overhead and therefore incorporated into attorney's rate)); see also Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995) (it is not appropriate to allow "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals.").

The court will disallow the following billing entries as administrative or clerical:

| 8/9/04 | Obtained docket entries | $42.00 |
|---|---|---|
| 8/9/04 | Telephone call to prior counsel re:  transfer of file | $63.00 |
| 8/10/04 | Sent email to previous defense counsel re: transfer of file | $42.00 |
| 8/27/04[18] | Reviewed and edited Counterclaim; . . . | $84.00 |
| 9/1/04 | Received and reviewed Summons from Clerk . . . . | $1,050.00 |
| 9/2/04 | Telephone call from process server . . . . | $63.00 |
| 9/2/04 | Received and reviewed binder of pleadings back from copier;  . . . . | $210.00 |
| 9/7/04[19] | Prepared binders and finalized with tabs . . . . | $210.00 |

---

[18]The time spent calling the court regarding service and fees is administrative.  I will exclude .4 hour for this activity.

[19]The time spent preparing binders with tabs and sending them will be deducted and this entry will be reduced by one hour.

| 9/8/04 [20] | Revised and finalized Response  . . . . | $420.00 |
| 9/27/04 | Telephone call to process server . . . . | $63.00 |
| 9/29/04 [21] | Telephone call to Process Server . . . . | $42.00 |
| 9/30/04 [22] | Telephone call from Process Server . . . . | $42.00 |
| 11/2/04 [23] | Continued drafting Reply Brief . . . . | $42.00 |
| 10/14/04 [24] | Finalize response . . . . | $23.00 |
| 10/27/04 [25] | Retrieved pleadings from Pacer . . . ; | $42.00 |
| 1/31/05 [26] | Conferred with [lead counsel] re:  email notice of Order . . . . | $42.00 |
| 2/21/05 [27] | Received and reviewed email notice . . . . | $42.00 |
| 3/2/05 [28] | Call to clerk; email to client. | $40.00 |

---

[20]I reduced his entry by 2 hours for the time spent retrieving docket entries, updating index for pleadings binders, and updating the binders.

[21]The time for the call to the process server is administrative.  I reduced the entry by .2 hour.

[22]I reduced this entry by .2 hour for the time talking to the process server.

[23]I reduced this entry by .2 hour for the call to the court regarding the deadline to file a reply.

[24]I reduced this entry by .1 hour for the time spent drafting a letter to the court regarding exhibits.

[25]I reduced this entry by .2 hour for the time to retrieve pleadings from Pacer.

[26]I reduced this entry by .2 hour for the time spent calling the court to inquire about an Order.

[27]I reduced this entry by .2 hour for the time spent obtaining filings from Pacer.
[28]I reduced this entry by .1 hour for a call to clerk.

| | | |
|---|---|---|
| 3/22/05 | Telephone call from District Court re: copy of Chao v. Koresko contempt hearing transcript; Sent courier to pick up transcript. | $168.00 |
| 5/12/05 | Prepared documents to copy . . . . | $168.00 |
| 5/13/05 | Received copies of pleadings for oral argument binder: . . . . | $210.00 |
| 6/22/06[29] | Calls to and from Judge's chambers . . . . | $87.00 |
| 6/27/06 | Print docket & correspondence | $120.00 |
| 8/18/06 | Perform internet search for corporate address; . . . . | $336.00 |
| 8/30/06[30] | Telephone call to Dauphin County . . . . | $60.00 |
| 10/9/06 | Assist attorney with filing of motion package. | $120.00 |
| 10/11/06[31] | 2 calls to Judge's chambers to determine best method to extend discovery . . . . | $30.00 |
| 10/12/06 | Prepare Notices of Depositions . . . . | $384.00 |
| 10/13/06[32] | Conferred w/ MLF re: 3rd party notices . . . . | $24.00 |
| 10/17/06 | Received and reviewed summary of conference call . . . . | $144.00 |
| 10/18/06[33] | Participated in conference call w/ MLF and Tom Morris . . . . | $480.00 |

---

[29]I reduced this entry by .2 hour for the calls to and from the Judge's chambers.

[30]I reduced this entry by .5 hour for the calls regarding summonses. The entry is subject to further reduction in section vi.

[31]I reduced this entry by .2 hour for the calls to the court regarding the extension of the discovery deadline.

[32]I reduced this entry by .1 hour for the call to the court clerk regarding the extension of discovery.

[33]I reduced this entry by 2 hours for the time conferring about subpoenas,

| | | |
|---|---|---|
| 10/31/06[34] | Conferred w/ MLF re: noticing depositions . . . . | $120.00 |
| 11/8/06[35] | Prepare deposition notices . . . . | $240.00 |
| 11/9/06[36] | Conferred w/ MLF re: subpoena to CTC; . . . . | $50.00 |
| 11/10/06 | Review dockets, obtain copies of pleadings . . . . | $240.00 |
| 11/15/06[37] | Research and retrieve complaint, counterclaim, answer, Administrative report, motion to dismiss and motion for summary judgment. | $180.00 |
| 11/16/06 | Revise Deposition Notices. | $48.00 |
| 11/20/06[38] | Conferred w/ MLF re: deposition Notice . . . . | $125.00 |
| 11/21/06 | Received and reviewed correspondence . . . . | $100.00 |
| 12/20/06 | Review of J. Green's policies and procedures . . . . | $154.00 |
| 1/8/07 | Telephone call from Judge Green's Chambers re: conference w/ Judge | $50.00 |
| 1/17/07 | Received and reviewed pleadings re:  Entry of Appearance by Jeanne Bonney; . . . . | $50.00 |
| 2/6/07[39] | Received and reviewed pleading re: Order re: Motion . . . . | $50.00 |

---

[34]I reduced this entry by .5 hour for the time spent noticing depositions and issuing subpoenas.

[35]I reduced this entry by 2 hours for the preparation of deposition notices and the accompanying cover letters.

[36]I reduced this entry by .2 hour for the discussion regarding a subpoena and revisions to the cover letter.

[37]Billing an hour and a half to retrieve documents which appear on the docket is unquestionably unreasonable.

[38]I reduced this entry for .5 hours for the call and letter rescheduling depositions.

[39]I reduced this entry by .2 hour for the letter to schedule a deposition.

| | | |
|---|---|---|
| 2/14/07 | Conferred with HJH re: Bonney's deposition; . . . . | $125.00 |
| 2/22/07 | Reviewed letter from Jeanne Bonney re: deposition scheduling. | $25.00 |
| 2/26/07[40] | Reviewed and edited letter to Jeanne Bonney re: new date . . . . | $150.00 |
| 2/26/07 | Correspondence to Attorney Bonney re: depositions . . . . | $132.00 |
| 2/27/07 | Receipt and review of correspondence from Jeanne Bonney Re: deposition of [client]. | $44.00 |
| 3/13/07 | Telephone call to Attorney Bud Stansell re: [client] deposition. | $22.00 |
| 3/15/07[41] | continued review of supplemental document production . . . . | $110.00 |
| 3/16/07[42] | Revised index of documents for deposition of [client] . . . . | $44.00 |
| 3/17/07 | Finalized preparation of documents for [counsel] and Index to the same for [client's] deposition. | $440.00 |
| 3/27/07 | Revised Notice of Deposition; Letter to Bonney re: Same. | $125.00 |
| 3/28/07[43] | Telephone call to Judge's clerk re: postponement . . . . | $75.00 |
| 4/6/07[44] | Finalized Second Motion to Compel . . . . | $500.00 |
| 4/7/07[45] | Correspondence to Judge Green re:  Second Motion . . . . | $50.00 |

---

[40]I reduced this entry by .6 hour for the tasks listed regarding the scheduling of depositions.

[41]I reduced this entry by .5 hour for the revision of an index of documents.

[42]I reduced this entry by .2 hour for revising an index of documents.

[43]I reduced this entry by .3 hour for the calls made regarding the postponement of a deposition.

[44]I reduced this entry by 2 hours for the preparation of exhibits and electronic filing of the motion.

[45]I reduced this entry by .2 hour for the organization of exhibits.

| | | |
|---|---|---|
| 5/21/07 | Discussion with [lead counsel] re: Bonney deposition . . . . | $110.00 |
| 6/13/07[46] | Preparation of motion for Protective Order; . . . . | $44.00 |
| 7/23/07[47] | Receipt and review of court docket entry . . . . | $25.00 |
| 8/9/07 | Organization of Exhibits to Summary Judgment Motion. | $625.00 |
| 8/13/07[48] | Receipt and review of correspondence . . . . | $25.00 |
| 8/14/07[49] | Reorganization of exhibits . . . . | $500.00 |
| 8/15/07[50] | Additional research re:  summary judgment motion . . . . | $25.00 |
| 8/29/07[51] | Finalized and Revised Responses . . . . | $50.00 |
| 9/5/07[52] | Revisions to reply in support of Motion . . . . | $50.00 |
| 9/10/07[53] | Telephone call to Magistrate Judge Hart's chambers re: settlement conference; . . . . | $25.00 |
| 1/23/08 | Located & printed clean copy of deposition | $25.00 |
| 5/28/08 | Receipt and review of letter from Judge to Koresko . . . Scanned, profiled and sent to [counsel]. | $25.00 |

---

[46]I reduced this entry by .2 hour for the ECF filing of a motion and a call to the court regarding that filing.

[47]I reduced this entry by .1 hour for the receipt and review of the docket.

[48]I reduced this entry by .1 hour for the electronic filing of a response.

[49]I reduced this entry by 2 hours for the time spent reorganizing exhibits.

[50]I reduced this entry by .1 hour for the electronic filing of a motion.

[51]I reduced this entry by .2 hour for the electronic filing of two documents.

[52]I reduced this entry by .2 hour for the electronic filing of a document and correspondence to the court regarding the electronic filing.

[53]I reduced this entry by .1 hour for the call regarding the settlement conference.

| | | |
|---|---|---|
| 12/22/08 | Receipt and review of Koresko's faxed Joint status Report of Counsel; scanned, profiled, and emailed to [counsel]. | $42.00 |
| 2/17/09 | Reviewed the docket in an attempt to locate a hearing transcript; . . . | $70.00 |
| 3/3/09 | Produced two copies of negative opinions | $70.00 |
| 3/18/09 | Updated pleadings bibles; identified and requested labels for file folders . . . . | $140.00 |
| 3/19/09[54] | Review, revise, and finalize motion to consolidate; . . . . | $27.00 |
| 3/24/09[55] | Review, revise and finalize response in opposition . . . . | $27.00 |
| 3/24/09 | Receipt and review of file labels from the records center; updated file folders | $210.00 |
| 3/27/09 | Receipt and review of file labels from the records center; applied to appropriate file folders | $140.00 |
| 6/30/09[56] | Review of court procedures re: filing of affidavits; . . . . | $27.00 |
| 11/19/09 | Telephone conference . . . to obtain a copy of . . . transcript. | $42.00 |
| 10/5/10 | Call from court; Arrange for court appearance. | $130.00 |
| 12/28/10[57] | Communicate with . . . [DOL] re: discovery from Solis . . . . | $36.00 |

---

[54]I reduced this entry by .1 hour for the electronic filing of a document.

[55]I reduced this entry by .1 hour for the electronic filing of a document.

[56]I reduced this entry by .1 hour for the electronic filing of a document.

[57]There are a number of entries from December 28, 2010 to June 29, 2011, in which counsel communicated with the DOL regarding exhibits from the Solis case.  On February 7, 2011, Judge McLaughlin granted counsel's request for copies of the discovery in the Solis case.  Therefore, I do not conclude that these billing entries are superfluous.  However, many of the entries are administrative and include only phone calls, correspondence, or emails.

| | | |
|---|---|---|
| 12/29/10 | Telephone conference with judge's chambers as to format of Discovery submission . . . . | $72.00 |
| 12/29/10 | Communicate with DOL lawyers re: discovery in Solis . . . . | $36.00 |
| 1/3/11 | Communicate with court clerk re: preferred format for submission re: desired additional authority. | $40.00 |
| 1/4/11 | Communicate with L. Henry from DOL re: discovery issues and report to [counsel] re: same. | $320.00 |
| 2/22/11 | Call to DOL attorney to discuss obtaining discovery . . . . | $34.00 |
| 2/23/11 | Call with DOL attorney to discuss request for discovery . . . . | $68.00 |
| 4/15/11 | Service of motion to compel. | $68.00 |
| 5/16/11 | Review and respond to email . . . ; telephone call to [DOL] regarding documents. | $42.00 |
| 5/17/11 | Telephone calls to DOL and court to obtain copies of Documents; . . . ; | $63.00 |
| 6/13/11 | Call with L. Henry of DOL regarding exhibits . . . | $238.00 |
| 6/14/11 | Draft and revise letter to DOL summarizing exhibits Sought from DOL hearing . . . . | $374.00 |
| 6/14/11 | Numerous calls with DOL, Court, and court reporting Services in attempt to locate exhibits from hearings. | $306.00 |
| 6/16/11 | Correspondence with court personnel and DOL regarding Obtaining exhibits from Solis v. Koresko hearings. | $170.00 |
| 6/16/11 | Review correspondence re:  obtaining exhibits . . . . | $135.00 |
| 6/20/11 | Review letter from DOL and correspond via telephone regarding hearing exhibits. | $136.00 |
| 6/20/11 | Review letters and emails re: DOL's willingness to produce records. | $202.50 |

30

| | | |
|---|---|---|
| 6/21/11 | Call with L. Henry and review letter regarding proposed production of exhibits . . . . | $102.00 |
| 6/21/11 | Correspondence . . .  to arrange teleconference . . . . | $136.00 |
| 6/23/11 | Correspondence . . . regarding upcoming teleconference. | $136.00 |
| 6/28/11 | Correspondence with DOL regarding copying of exhibits. | $34.00 |
| 6/29/11 | Correspond with DOL regarding exhibits. | $34.00 |
| 7/5/11 | Received box of paper exhibits . . .  for scanning. . . . | $84.00 |
| 7/18/11 | Call and correspond with Judge's clerk regarding status of submission of exhibits. | $68.00 |
| 7/19/11 | Call with court to discuss summary judgment . . . deadlines. | $34.00 |
| 7/26/11 | Correspond with court clerk regarding . . . exhibits . . . . | $68.00 |
| 8/1/11 | Obtain copy of slip opinion . . . . | $133.00 |
| 8/5/11 | Prepared and organized cross-reference list of admitted exhibits re:  upcoming summary judgment motion filing | $1,155.00 |
| 8/8/11 | Meet with K. Garland regarding necessary paralegal support for motion for summary judgment. | $136.00 |
| 9/5/12 | E-mails to and from A. Hornezes re: binders | $63.00 |
| 9/6/12 | Gathering of cases cited in Summary Judgment Motions for oral argument binder | $1,491.00 |
| 9/7/12 | Organization of cases and create index; Conversation with  A. Hornezes re: cases and exhibits; Review index and binders | $1,029.00 |
| 11/5/12 | File organization | $1,050.00 |
| 11/6/12 | Organize file transfer | $700.00 |

| 12/3/12[58] | Edit and finalize letter to Judge McLaughlin. . . . | $16.50 |
| 1/11/13 | Updating case file and correspondence. | $82.50 |
| 2/6/13 | Excerpting documents from 8/26/11 filing for inclusion in brief. | $66.00 |
| 2/12/13 | Filing Proposed Order, Motion w/ exhibits . . . . | $627.00 |
| 2/12/13[59] | Attention to Memorandum of Law . . . . | $33.00 |
| 2/12/13[60] | Editing and formatting Castellano's draft motion . . . . | $16.50 |
| 2/13/13 | Collated Memo of Law . . . . | $363.00 |
| 2/13/13 | Called EDPA ECF and Clerk in regards to the 2/12 . . . filing. | $82.50 |
| 5/3/13 | Circulating Koresko's Omnibus Reply . . . ; Updating the the case file. | $33.00 |
| 5/7/13[61] | Drafting cover letter . . . | $82.50 |
| 5/14/13 | Circulating the motion . . . ; Updating the case file. | $33.00 |
| 5/15/13 | Circulating the order . . .; Updating Case File re: same. | $33.00 |
| 5/24/13 | Circulating Koresko's Motion . . .; Updating Case File . . . . | $33.00 |
| 5/28/13 | Circulating the order . . . ; Updating the case file. | $33.00 |
| 6/4/13[62] | Review and editing of TRO motion . . . . | $33.00 |

---

[58]I reduced this entry by .1 hour for the drafting of a fax cover sheet.

[59]I reduced this entry by .2 hour for the e-filing and Federal Express activities.

[60]I reduced this entry by .1 hour for the ECF of the motion.

[61]I reduced this entry by .5 hour for the drafting of the cover letter, gathering exhibits, and preparing copies.

[62]I reduced this entry by .2 hour for updating the files.

| | | |
|---|---|---|
| 6/4/13[63] | Circulate the Secretary of Labor's Statement . . . . | $66.00 |
| 6/5/13[64] | Review, edited and finalized TRO motion . . . . | $82.50 |
| 6/5/13 [65] | Proofread/format/edit Motion for [TRO] . . . . | $33.00 |
| 6/6/13 | Update case file with [TRO] and supporting documents. | $49.50 |
| 6/7/13 | Update case file; Circulate Order . . . . | $33.00 |
| 6/11/13 | Updated the correspondence binder . . . . | $49.50 |
| 6/17/13 | Circulate Notice . . . ; Update case file: Calendar dates . . . . | $49.50 |
| 6/19/13 | Prepare transcript order form . . . . | $49.50 |
| 6/20/13 | Called transcriber to arrange delivery of . . . Transcript. | $33.00 |
| 6/25/13 | Circulate the . . . Transcript; Update case file. | $33.00 |
| 6/27/13 | Circulate Order . . .; Update case file. | $33.00 |
| 7/1/13 | Circulate Koresko's Motion . . .; Update case file. | $66.00 |
| 7/3/13 | OCR exhibit documents received for DOL; Organize Same on server; Burn a copy of same to DVD | $66.00 |
| 7/8/13 | Circulate Koresko's Motion . . . ; Update case file. | $33.00 |
| 7/9/13 | Circulate Orders . . .; Update case file; Calendar dates . . . . | $49.50 |
| 7/10/13 | Circulate Koresko's Notice . . .; Update case file. | $33.00 |
| 7/11/13 | Circulate Clerk's Notice . . . ; Update case file. | $33.00 |
| 7/16/13 | Circulate USCA Order . . . . | $33.00 |

---

[63]I reduced this entry by .4 hour for the circulation of an order and updating the file.

[64]I reduced this entry by .5 hour for the preparation of copies and faxes.

[65]I reduced this entry by .2 hour for preparation of a service letter and document for Federal Express, and filing.

33

| | | |
|---|---|---|
| 7/17/13 | Circulate Koresko's Motion . . .; Update the case file. | $49.50 |
| 7/24/13[66] | Circulate Orders . . . Update case file; . . . . | $82.50 |
| 7/25/13[67] | Circulate Koresko's Suggestion of Banruptcy . . . . | $66.00 |
| 7/26/13[68] | Revising Private Litigants' View of How the Court Should Proceed . . . . | $33.00 |
| 7/30/13 | Prepare Entry of Appearance and Corporate Disclosure Forms for the 3rd Circuit Court of Appeals. | $115.50 |
| 7/31/13 | Called USCA re: filing; Edit Entry of Appearance . . . . | $297.00 |
| 8/2/13 | Circulate Order . . .; Update case file; . . . . | $346.50 |
| 8/6/13 | Circulate 7/22 Telephonic Conference Transcript; . . . . | $33.00 |
| 8/7/13[69] | Proof, format and edit the Verified Statement . . . . | $115.50 |
| 8/8/13 | Update Court of Appeals case file . . .  Create a case file . . . . | $214.50 |
| 8/9/13 | Complete transcript order form for EDPA Clerk. | $16.50 |
| 8/13/13[70] | Prepare, proof and edit Creditors' Joinder . . . . | $33.00 |

---

[66]I reduced this entry by .5 hour for the circulation of orders, updating the file, and filing a certificate of service.

[67]I reduced this entry by .4 hour for the circulation of three orders and the updating of the case file.

[68]I reduced this entry by .2 hour for the e-filing and fax delivery of documents.

[69]I reduced this entry by .7 hour for the time spent filing and organizing case documents.

[70]I reduced this entry by .2 hour for the filing of documents, circulation, and update to the file.

| 8/16/13[71] | Proof, format and edit filing from Weir . . . . | $49.50 |
| 8/19/13 | Update case file with documents . . . Circulate same. | $82.50 |
| 8/20/13[72] | Proof, format and edit Amended Motion for relief; . . . . | $49.50 |
| 9/6/13[73] | Proof, format and edit letter to Judge McLaughlin . . . . | $33.00 |
| 9/9/13 | Circulate the Solis response . . . ; Update case file . . . . | $49.50 |
| 9/11/13 | Circulate orders . . . ; Update case file . . . ; Prepare word Document from pdfs . . . ; Called EDPA Bankruptcy Clerk and transcription service  . .. ; Prepare transcript request forms; Update case file with transcripts received. | $99.00 |
| 9/17/13 | Organize and file documents received re:  Bankruptcy Case. | $49.50 |
| 9/18/13 | Circulate Memo/Opinion . . .; Update case file with same. | $82.50 |
| 9/25/13 | Update case file with Notice . . . Prepare transcript request . . . Brought same to Fed Ex. | $115.50 |
| 10/7/13 | Update case file with 9/16 hearing transcript; Circulate same. | $49.50 |
| 10/16/13 | Prepare Entry of Appearance . . .; Prepare Certificate of Service; File same | $115.50 |
| 10/17/13 | Circulate and update case file with Koresko's Correspondence re:  Involuntary Bankruptcy Filings. | $49.50 |
| 10/22/13 | Update case file with documents received via ECF. | $66.00 |
| 10/25/13 | Update case file and circulate order re:  Florida Bankruptcy filings and Nationwide's response to same. | $99.00 |

---

[71] I reduced this entry by .3 hour for the time spent filing documents.

[72] I reduced this entry by .3 hour for filing a motion, contacting the bankruptcy clerk, circulating documents, and updating the file.

[73] I reduced this entry by .2 hour for the time spent circulating orders and updating the file.

| | | |
|---|---|---|
| 11/7/13[74] | Proof, format and edit Private Litigants' View . . . . | $49.50 |
| 11/8/13 | Update case file with 11/7 filing and Order . . . . | $99.00 |
| 11/12/13[75] | Update case file and circulate Koresko's Motion . . . . | $49.50 |
| 11/22/13 | Update case file and circulate Koresko's Response to 10/24 Order . . . . | $49.50 |

The reductions attributable to administrative/clerical tasks total $24,422.

### v.   Administrative Proceedings

The Third Circuit has held that attorney fees incurred during administrative proceedings preceding filing of an ERISA action cannot be recovered as part of a prevailing party's fees award. Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300. 312-13 (3d Cir. 2008). Here, the administrative proceedings took place after the commencement of the suit, and the docket was inactive from May 17, 2005 until June 23, 2006. See Docket Sheet & Doc. 56. Despite the inactive docket, it appears that the administrative process was completed on June 29, 2005, when Ms. Bonney, an attorney employed at the Koresko Law Firm, issued a letter denying Mrs. Castellano's claim for benefits. See Doc. 351 at 13. The billing records reflect entries related to the administrative process, which are not properly included in the ERISA fee request. Thus, I will reduce the fee by an additional $2,978.[76]

---

[74]I reduced this entry by .3 hour for circulating orders and updating the case file.

[75]I reduced this entry by .3 hour for circulating  motions, an order, and updating the case file.

[76]Although there are a number of billing entries during the time that the case was dormant on the docket, see Doc. 353-3 at 18-19, it does not appear that all of the activities were related to the exhaustion of administrative remedies. During this time and in completing the administrative process, Ms. Bonney sent Mrs. Castellano a questionnaire.

vi.   <u>Unnecessary Activities</u>

The fee request also contains billing entries for activities not reasonably expended on the pursuit of Mrs. Castellano's case.  For example, while the docket was dormant, counsel was pursuing remedies through the DOL and the Pennsylvania Disciplinary Board.  <u>See</u> Doc. 353-3 at 19-20 (entries for 6/9/05 – 6/29/05, 7/14/05 & 7/19/05).  (-$1,927)  Likewise, counsel sought information regarding an attorney in another suit, <u>see</u> Doc. 353-3 at 25 (.2 hour on 8/30/06), copies of complaints in other cases involving the REAL VEBA, <u>see</u> Doc. 353-3 at 32 (11/1/06), and the dockets in Montgomery County cases.  <u>See</u> Doc. 353-3 at 8 (.2 hour on 9/24/04), 11 (.2 hour on 10/7/04), 12 (10/26/04), 26 (9/13/06), 35 (11/15/06).  (-$1,023)  Counsel also sought docket entries in the Common Pleas Court regarding pleadings filed by Koresko.  <u>See</u> Doc. 353-3 at 7  (entries for 9/15 & 9/16/04).  (-$357)  Similarly, the call to the Commonwealth Court will also be disallowed.  <u>See</u> Doc. 353-3 at 46 (.2 hour on 2/23/07).  (-$44)   A review of Chicago filings was also unnecessary.  <u>See</u> Doc. 353-3 at 6 (9/13/04).   (-$480).  Counsel has also failed to establish the necessity for the preparation of an affidavit of a process server.  <u>See</u> Doc. 353-3 at 9 (1 hour on 9/29/04).  (-$230)  I will reduce the fee by the amounts attributable to these activities.[77]

---

Thus, I have excluded entries referencing the administrative proceeding, and entries involving discussions with the client or Florida counsel from May 18, 2005 to June 3, 2005, and review of denial letter sent by Ms. Bonney on June 29, 2005.  I have excluded full or partial billing for entries on the following dates: 5/18/05 ($63), 5/23/05 ($105), 5/23/05 ($80), 5/25/05 ($600), 5/27/05 ($200), 6/3/05 ($1,000), 7/1/05 ($126), 7/13/05 ($504), 7/13/05 ($300).

[77]The court is mindful of the fact that Mr. Silverstein's advocacy played a significant role in the DOL's case against the Koresko entities.  As Judge McLaughlin noted in her summary judgment opinion, the Castellano case was the first.  This case and Mr.

Likewise, review of other decisions related to the Koresko Entities was not necessary to pursue Mrs. Castellano's claim. Thus, I will reduce the fees charged to review the docket in REAL VEBA v. Sidney Charles. Doc. 353-3 at 63-66 (9/24/07, 9/25/07, 10/1/07, 10/7/07).[78] (-$100) I will also reduce the bill related to an interoffice conference regarding cases filed by or against Koresko. See Doc. 353-3 at 69 (6/4/08). (-$270) Counsel has not established the necessity of verifying the military status of V. Miller. See Doc. 353-3 at 13(11/5/04, 11/9/04). (-$121)

In November of 2010, there are billing entries for the drafting of a renewed motion to consolidate the Castellano action with the DOL action. See Doc. 353-4 at 6 (11/8/10, 11/11/10 – 11/15/10). That motion was not filed and the cases were not consolidated. The time spent on this activity will be excluded. (-$2,520) Similarly, in March and April 2011, counsel researched and drafted a motion for sanctions regarding the Koresko Entities' failure to comply with discovery requests. See Doc. 353-4 at 9-10 (3/31/11, 4/1/11, 4/4/11, 4/5/11). Rather than filing a motion for sanctions, counsel filed a motion to compel

Silverstein's advocacy brought to light the numerous breaches of fiduciary duty and the vast amount of assets that had been misused or converted from the Trusts. Although the DOL argues, based on the law of Trusts, that counsel's fee should not be paid by the Trusts because the benefit was conveyed only on Mrs. Castellano, the argument overlooks the non-monetary benefits conveyed to the Trusts and other plan participants.

[78]The entry for September 24, 2007 contains a single event – "Review of docket in REAL VEBA v. Sidney Charles appeal for status of decision" with a bill of .10 hour and $25. Doc. 353-3 at 63. The entry on October 1, 2007 contains multiple entries including review of the same docket. Doc. 353-3 at 64. I have assumed that the same amount of time was spent reviewing the Charles docket in calculating the reduction. I recognize that the ultimate decision in that case was relevant to a determination of the ERISA status of the REAL VEBA, but cannot justify the entries to check the status of the case prior to the determination.

responses, which was granted by the court.  See Docs. 206 & 210.  The time spent on the

sanctions motion will be disallowed.  (-$2,652)

The subtotal of the reductions in the foregoing paragraphs for unnecessary activities

is $9,724.

The more complicated matter is the time that is billed related to Solis v. Koresko,

Civil Action 09-988, the DOL case against the Koresko Entities (later named Perez v.

Koresko).  As previously mentioned, the court is aware of the role that Mr. Silverstein and

the Castellano case played in the DOL case against the Koresko Entities, providing impetus

and evidence for that action.  However, the Solis case was not necessary for the litigation of

Mrs. Castellano's claims, and I conclude that the time expended in analyzing Solis is not

compensable in this action.  However, there was some overlap in the discovery for the two

cases, and thus, when reasonable, I have allowed the time expended related to this area.[79]

Therefore, I will make the following reductions:

---

[79]The court first recognized this overlap on February 8, 2011, when Judge
McLaughlin granted Mrs. Castellano's request for discovery from the DOL in the Solis
case.  Doc. 203.  For example, on January 4, 2011, counsel reviewed the subpoenas served
by the DOL on the Koresko parties to determine what documents to request in discovery in
Castellano.  See Doc. 353-4 at 7.  I have also permitted the billings related to review of or
attendance at specific hearings in the DOL case which were relevant to Castellano.  See e.g.
Doc. 353-4 at 22 (billing for time spent observing oral argument in DOL case when issue of
REAL VEBA status as ERISA plan was argued).  It was not always an easy task to
determine what transcripts counsel reviewed in the billing records.  For example in May of
2011, counsel includes entries for the review of transcripts, some of which are not
identified.  Doc. 353-4 at 11.  However, later in the May billing records, counsel refers to
"[c]ontinued analysis of injunction hearing testimony."  Id.  I have determined that counsel
is referring to the transcript of the September 2, 3, 8, and 9, 2009 hearing before Judge
Jones in the DOL case.  The testimony regarding the REAL VEBA plan and the movement
of the funds through the plan's accounts were relevant to the Castellano case and no
reductions for this activity have been made.

| | | |
|---|---|---|
| 3/9/09 | Review and analyze DOL complaint; evaluate impact on case. | $600.00 |
| 3/10/09 | Further analysis of response to DOL Complaint . . . . | $200.00 |
| 3/10/09 | Receipt and review of Complaint in . . . Solis . . . . | $405.00 |
| 3/13/09 | Review of Koresko motion in DOL case. | $500.00 |
| 3/13/09[80] | Preparation of Motion to Consolidate. | $2,025.00 |
| 3/16/09 | Preparation of Motion to Consolidate. | $2,430.00 |
| 3/17/09 | Review motion to consolidate . . . . | $450.00 |
| 3/17/09 | Review DOL materials; continued . . . Motion to Consolidate. | $1,890.00 |
| 3/18/09 | Review DOL response . . . finalize motion to consolidate. | $600.00 |
| 3/19/09 | Confer with HH re:  motion to consolidate . . . . | $300.00 |
| 3/19/09[81] | Review, revise, and finalize motion to consolidate . . . . | $783.00 |
| 3/20/09 | Review and analyze DOL briefs re:  Koresko motion. | $756.00 |
| 3/25/09 | Review of DOL action materials re:  Koresko's actions. | $405.00 |
| 3/30/09 | Review Koresko response to motion to consolidate. | $400.00 |
| 4/1/09 | Preliminary review of DOL Statement of Interest . . . . | $250.00 |
| 4/2/09[82] | Receipt and review of "Secretary's Statement of Interest" . . . . | $2,457.00 |

---

[80]The motion to consolidate the Castellano case with the DOL case was ultimately unsuccessful.  See Docs. 172 & 183.

[81]This entry was previously reduced by .1 hour for administrative activities.  The remainder is now deleted.

[82]This entry includes several tasks related to the DOL action or the Motion to Consolidate the two cases.  The reference to the presiding judge's procedures regarding reply briefs is specifically related to the filing of a brief in reply to the response to the

| | | |
|---|---|---|
| 4/3/09 | Review and revise motion for leave to file . . . and reply brief . | $500.00 |
| 4/3/09 | Continued preparation of reply brief . . . . | $2,079.00 |
| 4/6/09 | Review of Solis v. Koresko docket for recent activity. | $27.00 |
| 4/7/09 | Review of Solis v. Koresko docket . . . . | $324.00 |
| 4/8/09 | Review of Solis v. Koresko docket . . . . | $324.00 |
| 4/9/09 | Review of Solis v. Koresko docket  . . . . | $27.00 |
| 4/13/09 | Review and analyze K's motion to reconsider in DOL case. . . . | $650.00 |
| 4/13/09[83] | Review of docket in Solis . . . . | $270.00 |
| 4/14/09[84] | Confer with Ira Silverstein re:  renewed motion to disqualify . . . | $27.00 |
| 4/21/09[85] | Review and analyze Bonney motion for extension of time . . . . | $600.00 |
| 4/21/09[86] | Review of Jeanne Bonney's Motion for Extension of Time . . . . | $513.00 |
| 4/27/09 | Receipt and review of . . . motion to consolidate. | $54.00 |

---

motion to consolidate.  Therefore, the billing related to this entry will be disallowed in its entirety.  See Doc. 353-3 at 76.

[83]This entry includes "review of Koresko Defendants' Motion for Reconsideration of the March 31, 2009 Order denying injunctive relief."  Doc. 353-3 at 77.  These documents refer to the DOL case and the billed time will not be compensated in Castellano.

[84]This entry includes a number of tasks related to Castellano.  See Doc. 353-3 at 77.  However it includes "review of Solis v. Koresko docket for recent activity," for which I will exclude .1 hour.

[85]The motion referred to in this entry was filed in the DOL case.  Civ. No. 09-988, Doc. 23.

[86]This entry includes tasks attributable to the Castellano case and tasks related to the DOL case.  I have reduced the hours by half.  See Doc. 353-3 at 78.

| | | |
|---|---|---|
| 4/30/09[87] | Receipt and review of . . . Motion to Consolidate . . . . | $337.50 |
| 5/1/09[88] | Review Koresko motion for leave to file addition brief . . . . | $500.00 |
| 5/1/09 | Preparation of "Response . . . [re:]  Motion to Consolidate." | $216.00 |
| 5/5/09 | Finalize response to Koresko motion . . . to file new brief. | $150.00 |
| 6/15/09[89] | Check status of DOL case . . . . | $50.00 |
| 6/15/09[90] | Review of opinion re:  motion . . . in DOL action . . . . | $54.00 |
| 7/22/09 | Review of Koresko Complaint filed . . . against the DOL . . . . | $216.00 |
| 7/23/09 | Review of orders on appeal in DOL actions . . . . | $270.00 |
| 7/24/09 | Review of Koresko/DOL cases for new activity. | $54.00 |
| 8/4/09 | Review of status of dockets in various Koresko DOL actions . . . . | $135.00 |
| 8/6/09 | Review of Koresko's Motion to Stay DOL action . . . . | $135.00 |
| 8/12/09 | Review of Koresko DOL dockets for recent activity . . . . | $81.00 |

---

[87]This entry includes tasks attributable to both cases and will be reduced by half.  See Doc. 353-3 at 78.

[88]The brief referred to in this entry is with respect to the motion to consolidate.  See Doc. 180.

[89]This entry includes items attributable to both cases.  See Doc. 353-3 at 78.  In the past, checking the status of the DOL case was charged .1 hour.  At counsel's billable rate of $500 per hour, this results in a $50 reduction for this entry.

[90]No activity appears on the Castellano docket from July 2, 2009 until March 17, 2010.  See Civ. No. 03-6903.  In May 2010, the case was reassigned from Judge Jones to Judge McLaughlin and she asked the parties to submit status letters to the court by May 24, 2010.  See Docs. 192 & 193.  There are a number of billing entries for this time that deal with a motion for a temporary restraining order.  That motion was filed on May 26, 2011, and is relevant to the Castellano case.  See Doc. 211.  Similarly, there are billing entries during this time for a motion to reopen the record for dispositive motions.  That motion was filed on November 9, 2010.  See Doc. 200.

| | | |
|---|---|---|
| 11/9/09 | Preliminary investigation of new case against Koresko | $600.00 |
| 11/10/09 | Continued investigation of new filings against Koresko. | $1,250.00 |
| 11/10/09 | Receipt and review . . . involving DOL v. Koresko . . . . | $810.00 |
| 11/12/09 | Attendance of hearing in DOL v. Koresko . . . . | $945.00 |
| 11/17/09 | Confer with IBS re:  DOL v. Koresko hearing . . . . | $54.00 |
| 11/19/09 | Telephone conference . . .  [re:] DOL v. Koresko hearing . . . . | $42.00 |
| 11/19/09 | Requested check . . . for the . . .  DOL v. Koresko transcript. | $14.00 |
| 11/20/09[91] | Review Motion for Summary Judgment . . . . | $1,269.00 |
| 11/20/09 | Prepared letter . . . requesting a copy of DOL v. Koresko . . . . | $28.00 |
| 11/24/09 | Review transcript f[ro]m injunction hearing . . . . | $1,250.00 |
| 11/24/09[92] | Continued drafting . . . ; reviewed transcript from . . . hearing. | $540.00 |
| 12/3/09 | Review latest filings in DOL case. | $500.00 |
| 12/3/09 | Finalized Motion for Expedited Discovery. | $648.00 |
| 12/3/09[93] | Review/Edit Motion for Leave to Take Expedited Discovery . . . . | $540.00 |
| 12/7/09 | Revised Motion to Leave to Supplement/Expedited Discovery . . . . | $540.00 |

---

[91]The motion for summary judgment referred to in this entry was filed in the DOL case.  <u>See</u> Civ. No. 09-988, Doc. 170.

[92]I have reduced this entry by 2 hours for the time spent reviewing the transcript from the hearing.  Although counsel refers to "DOJ" hearing, I believe he was referencing the DOL hearing.

[93]The time spent on a motion for expedited discovery during a period that the docket was dormant (7/2/09 – 3/17/10) is excluded.

| | | |
|---|---|---|
| 12/8/09[94] | Conferred w/HH; reviewed Order in DO[L] action . . . . | $54.00 |
| 12/22/09 | Call from Mannion re Brown; Check status of DOL case . . . . | $1,000.00 |
| 12/23/09 | Review Brown Estate filings . . . . | $1,250.00 |
| 1/8/10 | Emails to and from J. Mannion re:  Brown case. | $260.00 |
| 1/11/10 | Review latest filings in DOL case. | $416.00 |
| 1/28/10 | Obtained . . . dockets . . . summarized . . . DOL actions . . . . | $216.00 |
| 4/26/10 | E-mail [DOL] attorneys . . . . | $72.00 |
| 4/27/10 | Phone conference with [DOL] attorney . . . . | $144.00 |
| 4/28/10 | Research re: obtaining [DOL] transcript. | $252.00 |
| 4/28/10 | Review and analysis of [DOL] case transcripts. | $720.00 |
| 4/29/10 | Review and analysis of [DOL] case proceedings. | $252.00 |
| 4/30/10 | Review transcripts from DOL hearings. | $1,300.00 |
| 5/3/10 | Review DOL transcripts. | $1,625.00 |
| 5/5/10 | Phone conference . . . re: obtaining transcripts . . . . | $36.00 |
| 5/5/10 | Review transcript of DOL hearings. | $1,625.00 |
| 5/6/10 | Review and analysis of Third Circuit opinions in [DOL] cases. | $432.00 |
| 5/6/10 | Confer . . . re: possible request for transfer . . . . | $1,950.00 |
| 5/7/10 | Research re: obtaining [DOL] . . . injunction . . . exhibits . . . . | $180.00 |
| 5/7/10 | continued analysis of transfer issue . . . . | $1,300.00 |
| 5/10/10 | Draft letter requesting DOL transcripts. | $108.00 |

---

[94]The time spent on the Motion for Preliminary Injunction was necessary and related to the Castellano case.  The motion was ultimately filed May 26, 2011.  Doc. 211. Therefore, I have reduced this entry by .2 hour.

| 5/12/10 | Review and analysis of [DOL] preliminary injunction . . . . | $648.00 |
| 5/13/10 | Research re: obtaining DOL case . . . exhibits. | $144.00 |
| 5/20/10 | Review and analysis of DOL case transcripts. | $72.00 |
| 12/28/10[95] | Analyze discovery situation in Solis v. Koresko | $180.00 |
| 1/4/11 | Review status of DOL case . | $135.00 |
| 1/13/11[96] | Call from D. Morgado re: Mc[]Lain case . . . . | $236.25 |
| 1/18/11 | Emails from Morgado with Koresko correspondence. | $202.50 |

The subtotal for activity on the DOL case is $45,884.25, for a total reduction for unnecessary work of $55,608.25.

### 5.    25 Percent Upward Adjustment

Counsel seek an upward adjustment of 25% citing the extraordinary outlay of expenses in protracted litigation, an exceptional delay in the payment of fees, and the abuse counsel withstood challenging Mr. Koresko.  See Doc. 353-8 at 10.  Although upward adjustments of the lodestar are permissible under ERISA, "such modifications are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts."  Brytus v. Spang & Co., 203 F. 3d 238, 243 (3d Cir. 2000) (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).  In Persue v. Kenney A., the Supreme Court noted three reasons that

---

[95]At this point in the litigation, the discovery in Solis was not necessary to pursue Mrs. Castellano's claims.  Judge McLaughlin first acknowledged the overlap of the cases in February 2011.  See Doc. 203.

[96]This entry contains two tasks, one directly related to the Castellano case and the other not.  See Doc. 353-4 at 7.  I reduced the hours by half.

may support an enhancement of an attorney's fee:  when the hourly rate does not adequately measure the attorney's true market value, when the attorney made an "extraordinary outlay of expenses and the litigation is exceptionally protracted," and when there has been an exceptional delay in the payment of fees.  559 U.S. 542, 555-56 (2010).

Although the court recognizes the protracted litigation in this case resulted in both an outlay of costs and a delay in the payment of fees, those factors do not warrant a fee enhancement under the circumstances of this case.  First, the delay in litigation actually increased the fee award substantially by virtue of counsel's hourly rate increases through the years.  In 2004, the first billings in this petition note that lead counsel was charging $400 per hour.  In January 2012, he was charging $700 per hour.  Moreover, counsel have not submitted evidence that they or their firms have been negatively affected by the delay in payment.

To the extent counsel cites Mr. Koresko's  abuse as a basis for an increased fee award, the court is sympathetic, but not persuaded.  Although counsel may feel that his opponent impugned his reputation at times during this litigation, Judge McLaughlin's decision in this case should mend those wounds.  Counsel's reputation has not been harmed, and indeed his prevailing on behalf of his client despite the challenges presented by Mr. Koresko's conduct have no doubt enhanced it..

## IV.  <u>CONCLUSION</u>

For the reasons stated, the court declines to award counsel the 25% enhancement sought.  Counsel has sought a total of $807,924.68 in fees and costs.  I find no reason to

reduce the costs delineated by counsel in the billing records attached to the motion.  The attorneys' fees will be reduced by a total of  $240,524.42 as outlined in this memorandum.

Counsel will be awarded $567,400.26 which will be paid from the funds in the SEWBPT and REAL VEBA Trust, to be restored by the Koresko Defendants.  Consistent with Judge McLaughlin's prior orders, I find that the attorneys' fees amassed in this case were directly caused by the Koresko Entities' breaches of their fiduciary duty to pay Mrs. Castellano the benefit to which she was entitled.  Therefore, I will direct Wilmington Trust to pay these funds from the Trust and issue a separate order that these funds be restored to the Trust by the Koresko Defendants.  Appropriate Orders follow.