IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGIONAL EMPLOYERS' ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST | : : : : | CIVIL ACTION |
| v. | : : | |
| GRETCHEN HUTTO CASTELLANO | : | NO.  03-6903 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                                             February 10, 2016

      Presently before the court in this ERISA case is a motion for prejudgment interest filed by Counterclaim Plaintiff ("Mrs. Castellano").  On August 24, 2015, after a twelve-year court battle, the Honorable Mary McLaughlin granted Mrs. Castellano's motion for summary judgment, awarding her $750,000.  Reg'l Emp'rs' Assurance Leagues Voluntary Emps' Beneficiary Ass'n Trust v. Castellano, Civ. No. 03-6903 Doc. 351, 2015 WL 5025446 (E.D. Pa. Aug. 25, 2015).  Mrs. Castellano has now filed a motion for prejudgment interest on that amount.  Doc. 355.  For the reasons that follow, I conclude that such an award would be inequitable in the unique circumstances presented in this case, and will deny the motion.

I.      **FACTS AND PROCEDURAL HISTORY**[1]

Domenic M. Castellano, D.D.S., Mrs. Castellano's husband, owned a dental practice which joined the Regional Employers' Assurance League ("REAL"), an unincorporated association of employers who adopted a benefit structure for their employees' under the REAL's Voluntary Employees' Beneficiary Association ("VEBA"). Castellano, 2015 WL 5025446, at *2-3. The assets of the REAL are held in trust by the REAL VEBA Trust. Id. The Trust documents and all of the adoption documents were authored by John Koresko, V, an attorney and public accountant. Id. at *2.

Dr. Castellano sent contributions to the REAL VEBA Trust, part of which were used to purchase a $750,000 flexible premium adjustable life insurance policy on Dr. Castellano, which named the Trustee of the REAL VEBA Trust as beneficiary. See Castellano, 2015 WL 5025446, at *3-4. Upon Dr. Castellano's death in 2003, the REAL VEBA Trust received a check for $751,266.18 in life insurance proceeds. Id. at *4. Mrs. Castellano submitted a REAL VEBA Death Benefit Form naming her as Dr. Castellano's beneficiary. Id. In response, the plan administrator gave Mrs. Castellano a choice -- ten annual payments of $75,000 or a lump-sum payment of $597,560.14. Id. at *5. Mrs. Castellano, through counsel, demanded a lump-sum payment of $750,000, and, in

---

[1] The facts and procedural history of the case are discussed at length in Judge McLaughlin's decision and will be discussed only as necessary in considering the present motion.
The counterclaim defendants include the plan, PennMont Benefit Services, Inc., the plan's administrator, Jeanne D. Bonney, John J. Koresko, V, Koresko Financial L.P., and Koresko & Associates, P.C. I will refer to the counterclaim defendants as "the Koresko Entities" throughout this opinion.

2

response, the administrator filed a declaratory judgment action against Mrs. Castellano. Id. at *5-6. On June 29, 2005, the plan administrator denied Mrs. Castellano's claim for benefits. Id.

In her opinion, Judge McLaughlin specifically ruled that the ultimate denial of benefits to Mrs. Castellano violated ERISA. The court did not determine the propriety of the settlement offers made by the administrator (the ten-year payout or reduced lump-sum payment) prior to the denial of all benefits. Castellano, 2015 WL 5025446, at *9 n.16, 12. On August 24, 2015, more than twelve years after Dr. Castellano's death and the submission of the Death Benefit Form, and nearly twelve years after the inception of this lawsuit, Judge McLaughlin granted summary judgment to Mrs. Castellano on her counterclaim for violation of ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and ordered the REAL VEBA Trust to pay Mrs. Castellano $750,000. See id. at 14.

Mrs. Castellano's counsel has filed a motion for prejudgment interest. Doc. 355. The Koresko Entities have not responded to the motion.[2] Considering the Department of

---

[2] As I explained in my decision awarding attorneys' fees to Mrs. Castellano's counsel, the Koresko Entities have abandoned this litigation. Through most of the history of the case, they were all represented by Mr. Koresko and then briefly by other retained counsel. However, other counsel withdrew in 2013. See Doc. 314. Mr. Koresko was suspended from the practice of law by the Pennsylvania Supreme Court on December 19, 2013, see In the Matter of: John J. Koresko, V, 13-mc-294 (E.D. Pa. Dec. 27, 2013) (Doc. 1), and disbarred from practice on September 4, 2015. See Doc. 354-2. The judges of this court are currently considering disciplinary action. See In the Matter of John J. Koresko, V, 13-mc-294 (E.D. Pa.). Although the individual Plaintiffs may represent themselves, the corporate Plaintiffs may not. Corporations may not be represented by other than licensed counsel. United States v. Cocivera, 104 F.3d 566, 572 (3d Cir. 1996). Neither Mr. Koresko on his own behalf nor any counsel on any defendants' behalf have participated in the litigation since 2013.

Labor's ("DOL") familiarity with the related case, Perez v. Koresko, C.A. 09-988, I asked the DOL to respond to the motion. The DOL has taken no position on the motion for prejudgment interest. Doc. 363 at 2.

## II.   LEGAL STANDARD

The Third Circuit has held that, although ERISA does not specifically provide for the recovery of prejudgment interest on a delayed ERISA benefit, "an ERISA plaintiff who prevails under § 502(a)(1)(b) in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award." Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 207 (3d Cir. 2004). Such an award is committed to the broad discretion of the trial court. Id. at 206 (citing Ambromovage v. United Mine Workers, 726 F.2d 972, 981-82 (3d Cir. 1984)). "As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." Skretvedt, 372 F.3d at 208 (quoting Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992)). However, such an award should be denied if "exceptional or unusual circumstances exist making the award of interest inequitable." Id. (quoting Anthuis, 971 F.2d at 1010); see also Ambromovage, 726 F.2d 972, 982 (prejudgment interest is to be "given in response to considerations of fairness [and] denied when its exaction would be inequitable").

Although the cases in our circuit establish that an award of prejudgment interest is the rule rather than the exception, the courts have identified circumstances when the

4

equities did not favor such an award. In Ambromovage, the Third Circuit approved the district court's denial of prejudgment interest in a pension case when the union fund failed to properly collect pension contributions for a number of years. 726 F.2d 972. In the district court opinion in that case, the court noted that the union did not benefit financially from its failure, and reasoned that disgorgement of unjust enrichment did not favor an award of prejudgment interest. Nedd v. United Mine Workers, 488 F.Supp. 1208, 1222 (M.D. Pa. 1980). While the district court recognized the time-value of money, noting that "nine million 1980 dollars cannot buy what nine million 1960 dollars could," id. at 1222, the court was swayed by another equitable consideration -- the same union that failed to collect the pension contributions also loaned large sums to the pension fund, a significant portion of which had been forgiven. Id. at 1223. The Third Circuit approved the district court's exercise of discretion in denying prejudgment interest on equitable grounds. 726 F.2d at 982-83.

The Third Circuit has also affirmed the denial of an award of prejudgment interest on equitable grounds in a subrogation/reimbursement case. Bill Gray Enters, Inc. Emp. Health & Welfare Plan v. Gourley, 246 F.3d 206 (3d Cir. 2001) (abrogated on other grounds U.S. Airways, Inc. v. McCutchen, 663 F.3d 671 (3d Cir. 2011)). The court explained that the insured's "refusal to reimburse the Plan was not motivated by bad faith nor was it unreasonable in the context of the complicated ERISA scheme" and "in balancing the equities it would be unfair to impose pre-judgment interest payments on [the insured]." Id. at 212 n.3.

Similarly, in GE Group Life Assur. Co. v. Turner, Civ. No. 05-342, 2009 WL 150944 (W.D. Pa. Jan. 20, 2009), the district court declined to award prejudgment interest in an ERISA case in which the court found the insured had failed to repay an overpayment of disability insurance proceeds. Recognizing the economic realities of the situation, the court declined to make such an award. "In this matter, it appears that it will be difficult to recover any significant judgment from Defendant; consequently, such an award would not serve to make the prevailing party whole." Id. at *8.

Based on caselaw from this circuit, although there is a presumption in favor of an award of prejudgment interest to fully compensate an aggrieved party in the ERISA context, equitable considerations can overcome that presumption.

## III. DISCUSSION

Mrs. Castellano's counsel argues the applicability of prejudgment interest in this case is "manifest." Doc. 355-2 at 3. "Simply paying Mrs. Castellano $750,000 12 years after-the-fact will not remotely make her whole." Id.[3] The problem with counsel's argument is that he has completely overlooked the second part of the prejudgment interest test adopted by the Third Circuit, which requires the court to determine if the award would be inequitable. Upon consideration of the unusual circumstances of this case, I conclude that an award of prejudgment interest would be inequitable.

This case is integrally related to Perez v. Koresko, Civil Action 09-988, an action brought by the DOL against Koresko and his related entities for various ERISA

---

[3]Much of counsel's brief is dedicated to the calculation of such interest and the determination of whether Mrs. Castellano was entitled to a lump-sum payment of $750,000 in 2003.

violations, and several other actions brought by participants in Koresko-marketed plans. In Perez, Judge McLaughlin granted summary judgment to the DOL, finding that Koresko and the related entities had violated their fiduciary duties and misappropriated assets belonging to the REAL VEBA and SEWBPT Trusts. See 86 F. Supp.3d 293 (E.D. Pa. 2015). Judge McLaughlin detailed transfers of Trust assets to, among many others, the Koresko law firm, to lobbying firms, assets used to purchase multiple condominium units in Nevis, transfers to a lawfirm in Anguilla, the purchase of a property in South Carolina, and payments for litigation expenses and outside attorneys. Id. at 341-44, 347-54. Additionally Judge McLaughlin noted that Koresko further depleted Trust assets by taking out loans on the life insurance policies owned by the REAL VEBA and SEWBPT Trusts. She estimated that between August and November 2009, Mr. Koresko withdrew over $35 million in loans. Id. at 348-49. At the time of Judge McLaughlin's decision, she had already appointed an Independent Fiduciary to manage the Trusts and taken control of $19,987,362.16 in Trust assets. Id. at 393-94. Judge McLaughlin found that the Koresko Entitites were liable for an additional $19,852,114.88, and ordered restitution and disgorgement in that amount.[4] Id. at 394. Shortly after her decision, Judge McLaughlin appointed a forensic accountant to conduct an equitable accounting of the Trusts' assets and develop methodologies for the equitable distribution of the Trusts' assets. C.A. 09-988, Doc. 1240 at 2. That process is currently ongoing. The remainder

---

[4] Judge McLaughlin later amended the order to reduce the award from $38,417,109.63 to $38,337,540.89 to account for errors in the original accounting. Civ. No. 09-988, Doc. 1198.

of the cases brought by plan participants against the Koresko Entitites have been stayed pending the equitable distribution of the Trusts' assets.

Although the court recognizes that the value of Mrs. Castellano's $750,000 award is depleted by the 12 years it took her to obtain it,[5] the economic reality is that other Trust beneficiaries will bear the cost of every dollar that is given to Mrs. Castellano in prejudgment interest.[6] Based on her position as the first of the victims of the Koresko scheme to file suit, Mrs. Castellano's case was decided prior to the forthcoming equitable distribution of the Trusts' assets. See Doc. 351 at 31-32. Her claim was for $750,000 and she received that, albeit delayed. The other Trust beneficiaries will not be in the same position. Judge McLaughlin has already determined that there is a shortfall of over $19 million due to the malfeasance of the Koresko Entities. The full extent of the depletion of assets will only be known when the forensic accountant completes its accounting, which is expected in the near-future. Thus, the equities weigh heavily

---

[5] In her decision granting Mrs. Castellano's motion for summary judgment, Judge McLaughlin did not determine the propriety of the Koresko Entitites' offer to settle the death claim for a payout over ten years or an up-front settlement of a reduced value. Rather, Judge McLaughlin's decision was limited to the Koresko Entities' ultimate denial of any death benefit to Mrs. Castellano. Doc. 351 at 22 n.16, 30. In light of my decision not to award prejudgment interest, I similarly do not decide whether Mrs. Castellano was entitled to the entire policy amount upon her husband's death.

[6] It is unclear what, if any, assets can be recovered from the Koresko Entities. As previously noted, they have abandoned this litigation. Even after Judge McLaughlin froze any assets that were found and traceable to the Trusts and installed the Independent Fiduciary, Mr. Koresko shifted assets. See Perez, 86 F. Supp.3d at 367-69. Judge McLaughlin's detailed analysis of the movement of the monies demonstrates the lengths to which the Koresko Entities went to abscond with Trust assets. Some of the converted money was used to purchase condominiums in Nevis and additional money was transferred to Anguilla. Tracking the movement of the money and the sheer number of accounts through which it traveled was akin to trying to put socks on an octopus.

against an award of prejudgment interest to Mrs. Castellano and I will exercise my discretion to deny such award.

An appropriate order follows.